UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MATTHEW LINCOFF and TAYLOR LINCOFF, *Co-Personal Representatives* of the Estate of Landon Lincoff,<br><br>Plaintiffs,<br><br>v.<br><br>TOWN OF TOPSFIELD, JOHN BOYLE, and JENNIFER COLLINS-BROWN<br><br>Defendants. | Civil Action No.<br>23-12125-BEM |

# MEMORANDUM AND ORDER ON
## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

**MURPHY, J.**

Plaintiffs Matthew Lincoff and Taylor Lincoff (collectively, "Plaintiffs" or "the Lincoffs") brought this action after the tragic death of Landon Lincoff ("Landon"), their 8-month-old child, who suffered from a cardiac arrest following an illness on June 5, 2021.[1] The Lincoffs contend that the Town of Topsfield (the "Town"), Fire Chief Jennifer Collins-Brown ("Collins-Brown") (collectively, with the Town, the "Town Defendants"), and Paramedic Lieutenant John Boyle ("Boyle") (collectively with the Town Defendants, "Defendants") are responsible for Landon's death, alleging that they are liable for the negligent care provided and the policy and act of cancelling necessary supplemental ambulance service. Before the Court now are motions from both the Town Defendants and Boyle for partial summary judgment, seeking dismissal of the Lincoffs' federal claims. For the reasons stated below, the Court will grant both motions.

---

[1] Plaintiffs are co-personal representatives of Landon's estate.

I.    **Background**

    A.    **Factual Background**

        1.    **Topsfield Emergency Services**

The Topsfield Fire Department ("TFD") provides emergency transport services for the Town, including providing both Advanced Life Support ("ALS") and Basic Life Support ("BLS") services. Dkt. 55 ("Town Defendant's Statement of Material Facts" or "Town's SMF") ¶ 101; Dkt. 50 ("Boyle's Statement of Material Facts" or "Boyle's SMF") ¶¶ 1–4.[2] Since 2020, TFD has been the primary transport service, though the Town maintains agreements with other emergency first responder services to provide backup emergency services. Town's SMF ¶ 101; Boyle's SMF ¶¶ 1–4, 7. Backup emergency services are available via an "intercept," which refers to any ambulance or individual dispatched for the purpose of supplementing staff. Boyle's SMF ¶ 8.[3]

One such service is Northeast Regional Ambulance Service ("NRAS"). Town's SMF ¶ 101; Boyle's SMF ¶ 7. The Town claims to have decided to make TFD the primary transportation service because when NRAS was the primary transport provider, NRAS's delayed response time would result in TFD personnel arriving to provide services but then needing to wait

---

[2] The Court cites to Boyle's and the Town Defendants' statements of material facts where the Lincoffs have admitted or otherwise adopted the relevant facts in their counterstatements of material facts. The Court treats as undisputed those facts for which the Lincoffs provide only additional information or context which fails to actually dispute the facts as presented. *See, e.g.*, Dkt. 62-2 ("Plaintiffs' Counterstatement to Boyle's SMF" or "Boyle Counterstatement") ¶¶ 1–4.

[3] The Lincoffs purport to dispute this because they "lack personal knowledge." Boyle Counterstatement ¶ 8. But this fails to create a genuine dispute of material fact at summary judgment. *See* Local Rule 56.1 ("Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties."); *Silva v. Town of Uxbridge*, 771 F. Supp. 3d 56, 65 (D. Mass. 2025) ("The nonmovant 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986))). Thus, the Court treats this fact as undisputed.

for NRAS to arrive to make the transport. Town's SMF ¶¶ 104, 106–08;[4] Boyle's SMF ¶ 10.[5] The Town experienced additional difficulties relying on NRAS's staffing of ambulances, including sending BLS services instead of ALS. Town's SMF ¶¶ 83, 97–100.[6]

Around the same time, Collins-Brown expressed a desire to ensure that TFD paramedics gain more experience in the field, to provide better and faster care to Topsfield residents. Dkt. 61-2 ("Plaintiffs' Counterstatement to Town's SMF" or "Town Counterstatement") ¶¶ 136–39; Dkt. 62-2 ("Plaintiffs' Counterstatement to Boyle's SMF" or "Boyle Counterstatement") ¶¶ 114–16.[7] Boyle was aware of this preference. *E.g.*, Boyle Counterstatement ¶ 4. Collins-Brown received documents reflecting concerns that because TFD was not equipped to operate as the primary transport service, Topsfield residents would face increased danger. Town Counterstatement ¶ 142; Boyle Counterstatement ¶ 119.[8]

The Lincoffs contend that this preference became a policy or practice of cancelling NRAS intercepts to allow the TFD paramedics to gain more experience. *See, e.g.*, Town Counterstatement ¶ 85. However, none of the TFD personnel involved in this case were aware of

---

[4] The Lincoffs do not dispute that this was the claimed basis, but dispute that this was the real reason for the change. Dkt. 61-2 ("Plaintiffs' Counterstatement to Town's SMF" or "Town Counterstatement") ¶¶ 104, 106–07.

[5] The Lincoffs purport to dispute this fact but only address the cancellation of NRAS intercepts *after* TFD became the primary transport service, which does not relate to the pre-2020 NRAS transports. Boyle Counterstatement ¶ 10. Thus, the Court treats this fact as undisputed.

[6] The Lincoffs purport to dispute this fact on the basis that they "lack personal knowledge . . . and therefore cannot admit or deny the truth of the assertions contained in Paramedic Hallinan's affidavit." Town Counterstatement ¶¶ 83, 99–100. But this fails to create a genuine dispute of material fact at summary judgment, and thus the Court treats such facts as undisputed. *See supra* note 3.

[7] The Town Defendants and Boyle did not respond to the Lincoffs' additional facts. The Court thus treats any additional facts set forth as undisputed, except where Town Defendants and Boyle elsewhere have raised a dispute through their statements of facts.

[8] Boyle and the Town Defendants separately moved to strike this and certain exhibits that the Lincoffs rely on to oppose summary judgment. Dkts. 68–69. Because the Court concludes that summary judgment is appropriate even including such exhibits in the record, the Court denies the motions to strike as moot.

a policy or practice of cancelling intercepts for any reason other than because it was deemed unnecessary for patient care.  Town's SMF ¶¶ 87–89, 105, 118; Boyle's SMF ¶¶ 11–12, 14, 98.[9]

### 2. Landon's Emergency

The evening of June 4, 2021, into the early hours of June 5, 2021, eight-month-old Landon stopped breathing at his home in Topsfield, Massachusetts, after having been sick with a cough and respiratory illness in the preceding days.  Town's SMF ¶¶ 4, 19–21; Boyle's SMF ¶¶ 18–19. After his father, Matthew Lincoff, noticed Landon had stopped breathing, he brought Landon to Taylor Lincoff—his wife and Landon's mother—who then called 911.  Town's SMF ¶¶ 2–3, 22–23; Boyle's SMF ¶¶ 19–20.

Two Topsfield officers arrived at the Lincoffs' residence around 2:11 a.m. and began to administer first aid to Landon.[10]  Town's SMF ¶ 27; Boyle's SMF ¶¶ 21–22.  The officers found Landon pulseless and not breathing.  Town's SMF ¶ 33; Boyle's SMF ¶ 22.[11]

TFD Paramedic Jonathan Hallinan ("Hallinan") overheard the dispatch call for an infant not breathing and drove to the Topsfield Fire Department.  Town's SMF ¶ 38.  At the time, Hallinan was certified to practice at the Paramedic level and certified by the American Heart Association as a Pediatric Advanced Life Support ("PALS") Provider and as an Advanced

---

[9] The Lincoffs purport to dispute this by arguing the existence of a pattern or practice of intercept cancellations, but they provide no evidence that the TFD members had awareness of this pattern or practice. *See, e.g.*, Boyle Counterstatement ¶ 97. The Court notes that the Boyle Counterstatement skips responding to paragraph 86 in Boyles SMF, and so the numbering of the remaining paragraphs are all off by one.

[10] The Lincoffs dispute the effectiveness of this aid, *see, e.g.*, Town Counterstatement ¶ 30, 34, such a dispute is not material to the federal claims at issue in the present motions.

[11] The Lincoffs purport to "[p]artially dispute[] . . . the characterization of Landon's condition," because the "[a]ccording to the TFD Patient Care Report, Landon was 'pale, warm, and unresponsive.'" Boyle Counterstatement ¶ 22.  None of those descriptions undermines the contention that Landon was pulseless and not breathing at the time.

Cardiovascular Life Support ("ACLS") Provider.[12] *Id.* ¶¶ 40–41; Boyle's SMF ¶ 24. Hallinan requested ALS mutual aid at 2:12 a.m., though this request did not ask any specific group to respond,[13] and he stated that he did not know whether NRAS would be the service responding. Town's SMF ¶¶ 42, 80;[14] Boyle's SMF ¶ 25. Hallinan initiated this request "based on the reported acuity of the call and because he felt two paramedics were needed for the call." Town's SMF ¶ 42. NRAS indicated that they were responding at 2:13 a.m. Boyle's SMF ¶ 26. Boyle received the alert while he was off duty at home and indicated that he was responding to the call, leaving to intercept the ambulance along its route to Beverly Hospital. *Id.* ¶¶ 27–28. At the time, Boyle was also certified in PALS and ACLS. *Id.* ¶ 24; Town's SMF ¶ 65.

At approximately 2:16 a.m., the TFD ambulance arrived at the Lincoffs' residence. Town's SMF ¶ 44. Two EMT-Basic providers staffed this ambulance, and they took over care after observing that Landon was limp and not crying. *Id.* ¶¶ 45–53; Boyle's SMF ¶ 30. At approximately 2:17 a.m., NRAS radioed that they were heading to the Lincoffs' residence. Boyle's SMF ¶ 29. By 2:19 a.m., the TFD ambulance had departed the Lincoffs' residence with Landon and Taylor Lincoff on board and headed for Beverly Hospital with a police escort. *Id.* ¶ 30; Town's SMF ¶¶ 54–55. As of 2:19 a.m., the NRAS ambulance indicated it was "en route as well [and would] intercept on [route] 97 if needed." Boyle's SMF ¶ 31. By 2:22 a.m., the TFD

---

[12] The Lincoffs emphasize that Halliman at the time had only been certified for approximately five months and had no experience responding to pediatric or infant cardiac arrest calls, but do not dispute his actual qualifications. Town Counterstatement ¶¶ 40–41.

[13] Neither party suggests that it was unusual for a mutual aid request not to seek any specific group to respond.

[14] The Lincoffs purport to dispute this because they "lack personal knowledge regarding the statements made in Paragraph 42 and therefore cannot admit or deny the truth of the assertions contained in Paramedic Hallinan's affidavit" and that the affidavit was provided four years after the incident. Town Counterstatement ¶ 42. But this fails to create a genuine dispute of material fact at summary judgment, and thus the Court treats this fact as undisputed. *See supra* note 3.

ambulance had picked up Hallinan. Boyle's SMF ¶ 32; Town's SMF ¶¶ 43, 60. At 2:23 a.m., the TFD ambulance picked up Boyle. Boyle's SMF ¶ 33; Town's SMF ¶ 64.

With two paramedics now on board—Hallinan and Boyle—the ambulance's staffing comported with the local protocols and requirements for responding to Priority I calls involving cardiac arrests, including the EMS Dispatch Priority protocol and 105 Mass. Code Regs. 170.305. Boyle's SMF ¶ 35;[15] Town's SMF ¶ 117.[16] "Upon boarding the ambulance, Boyle confirmed that two Paramedics were aboard the TFD ambulance, and that the ambulance was appropriately staffed for a Priority I call." Boyle's SMF ¶ 37.[17] Throughout the response, NRAS and TFD personnel focused on the number of paramedics on board the ambulance. *Id.* ¶ 36. Even before Hallinan and Boyle boarded the ambulance, NRAS told the TFD ambulance that NRAS would "be coming down [route] 97 also, we will intercept you as easy as possible. If you do not need to stop, continue on, we will stop if you need to." *Id.* ¶ 45. The NRAS paramedics were each also certified PALS and ACLS providers. Town's SMF ¶¶ 123–24.

---

[15] The Lincoffs dispute that the requirement was satisfied "because the personnel on board lacked the requisite pediatric emergency training and experience to qualify." Boyle Counterstatement ¶ 35. But the evidence cited does not support the contention that Boyle's and Hallinan's certifications and qualifications did not satisfy the policy's requirements.

[16] The Lincoffs emphasize that the paramedics on the NRAS intercept were more qualified than Hallinan and Boyle. *See, e.g.*, Town Counterstatement ¶ 150 ("NRAS paramedic Christopher Colby, who was aboard the NRAS intercept on June 5, 2021, has estimated that he has likely participated in somewhere between 50 and 100 'High Acuity Low Occurrence' Events related to sick or critical infants and/or children."); Boyle Counterstatement ¶ 127 (same). The Court notes that (1) there is no evidence that the Boyle knew this information, (2) this information says little about Colby's role in treating those infants or children or how successful his treatments were, and (3) the Lincoffs have not provided evidence that Boyle could have or should have concluded that any NRAS paramedic who may have been on the intercept had similar levels of experience.

[17] The Lincoffs dispute "any suggestion" that having two paramedics on board "reflects adequate care for a pediatric cardiac arrest patient." Boyle Counterstatement ¶ 37. The Lincoffs do not contest that this is the staffing required but assert that the medical services provided were suboptimal. *Id.* This does not contradict Defendants' assertion that two paramedics is an appropriate staffing level for a Priority I medical emergency, and the Court thus deems this fact undisputed.

6

While heading to Beverly Hospital, the ambulance driver asked whether he should cancel the NRAS intercept because he "had never heard of a call needing more than two paramedics and an EMT." Town's SMF ¶¶ 68–69[18]; Boyle's SMF ¶¶ 38–39. Boyle testified that he directed the driver to cancel the intercept because they already had two paramedics on board, which he believed reflected appropriate staffing, and because he was concerned that delaying transport for another intercept would be detrimental to Landon's care. Town's SMF ¶ 72; Boyle's SMF ¶¶ 39–42.[19] None of the TFD personnel on board the ambulance was aware of who was aboard the intercepting NRAS ambulance, or their qualifications or experience. Town's SMF ¶¶ 78–79, 81–82, 112; Boyle's SMF ¶ 48. Boyle testified that he believed having one more paramedic on board would not have been clinically better than having an EMT-basic performing CPR. Town's SMF ¶ 82, 112. The Lincoffs contend that Boyle was at least aware that NRAS paramedics are PALS-certified, at a minimum, and that NRAS generally had more experience. Town Counterstatement ¶¶ 78–79, 82, 112.

Throughout the transport, TFD personnel provided medical care to Landon, though the parties dispute the effectiveness and quality of that care. *See, e.g.*, Town's SMF ¶¶ 62–63, 66–67; Town Counterstatement ¶¶ 62–63, 66–67; Boyle's SMF ¶¶ 52–60, 81, 87; Boyle Counterstatement

---

[18] The Lincoffs do not dispute that this was the rationale the driver provided, but they claim that "the cancellation in this case was consistent with a broader pattern—not a patient-specific assessment" and that the "stated rationale also reflects a fundamental misunderstanding of clinical requirements for a pediatric cardiac arrest rather than an informed evaluation of Landon's condition." Town Counterstatement ¶ 69. This does not create a genuine dispute about the driver's reason for asking about cancelling the intercept. Whether the Lincoffs are correct or not, they provide no evidence that the driver acted pursuant to this alleged pattern, as opposed to his understanding that an intercept would be cancelled if the responding ambulance was staffed with the sufficient number of the appropriate level of paramedics for the call. *See* Town's SMF ¶¶ 88–89.

[19] The Lincoffs dispute that the ambulance was appropriately staffed, *see, e.g.*, Boyle Counterstatement ¶ 40, but only respond that they "lack personal knowledge" with regards to the other asserted facts, *see id.* ¶¶ 39, 41–42. As discussed *supra*, note 3, this is insufficient to show a genuine dispute at summary judgment.

7

¶¶ 52–60, 81, 86.[20]  The NRAS ambulance remained on standby "if needed."  Boyle's SMF ¶ 44.  The TFD ambulance drove at a dangerously excessive speed to reach the hospital faster.  *Id.* ¶¶ 76, 78; Town's SMF ¶ 71.  After the transport, Landon was treated at Beverly Hospital before being transferred to Children's Hospital, where he unfortunately passed away.[21]  Town's SMF ¶ 77; Boyle's SMF ¶¶ 92–93.

Collins-Brown was out of town during Landon's emergency.  Town's SMF ¶ 109.  During the response, she monitored the radio, but she made no decisions and, in fact, made no radio transmissions whatsoever.  *Id.* ¶ 110.  Collins-Brown testified that it would have been inappropriate for her to interfere in the response from a state away, and that she would not have done so for any call.  *Id.* ¶ 113.

### B.  Procedural Background

The Lincoffs filed this action in Massachusetts Superior Court on July 21, 2023, alleging six counts collectively against Defendants: negligence and wrongful death against the Town (Count I); conscious pain and suffering against the Town (Count II); and violations of 42 U.S.C. § 1983 ("section 1983") against each Defendant (Counts III–VI).  Dkt. 1-1.  Defendants timely removed the case to this Court on September 18, 2023.  Dkt. 1.  On October 14, 2025, Boyle moved for summary judgment.  Dkt. 48; *see also* Dkt. 51 ("Boyle Mem."); Dkt. 62-1 ("Boyle Opp.").  On October 15, 2025, the Town Defendants moved for summary judgment.  Dkt. 53; *see also* Dkt. 54 ("Town Mem."); Dkt. 61-1 ("Town Opp."); Dkt. 67 ("Town Reply").  On December 8, 2025,

---

[20] *See supra*, note 9, regarding the paragraph numbering in the Boyle Counterstatement.

[21] Landon's cause of death was listed as "complications of parainfluenza virus 2 and rhinovirus/enterovirus."  Boyle's SMF ¶ 94.  The Lincoffs contend that though this was the listed cause of death, Landon's death resulted from a prolonged period of inadequate emergency response, resuscitation, oxygenation, and ventilation, which led to severe brain injury.  Boyle Counterstatement ¶ 93 (*see supra*, note 9, regarding the paragraph numbering in the Boyle Counterstatement).  This dispute is not material to the Lincoffs' federal claims.

Boyle and the Town Defendants each filed a motion to strike certain exhibits filed in support of the Lincoffs' oppositions and portions of the Lincoffs' statements of facts. Dkts. 68–69. The Court held a hearing on January 8, 2026, and took the matter under advisement.

## II. Standard of Review

Summary judgment will only be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Grogan v. All My Sons Bus. Dev. LLC*, 552 F. Supp. 3d 142, 145 (D. Mass. 2021) (quoting Fed. R. Civ. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009). However, "[a]s to issues on which the party opposing summary judgment would bear the burden of proof at trial, that party may not simply rely on the absence of evidence but, rather, must point to definite and competent evidence showing the existence of a genuine issue of material fact." *Perez v. Lorraine Enters.*, 769 F.3d 23, 29–30 (1st Cir. 2014).

"At summary judgment, the court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* (citations and internal quotes omitted). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I*, 53 F.3d 454, 460 (1st Cir. 1995). However, "[t]he opposing party may not rely on conclusory allegations and unsupported speculation, and even when 'elusive concepts' like motive or intent are at issue summary judgment may be appropriate.

9

The opposing party must offer 'definite, competent evidence' to defeat a properly supported motion for summary judgment." *Burns v. State Police Ass'n of Mass.*, 230 F.3d 8, 9 (1st Cir. 2000) (citations omitted).

## III. Discussion

Defendants have moved for summary judgment on the Lincoffs' section 1983 claims. In the two motions, Defendants argue that the section 1983 claims against Boyle and Collins-Brown fail because there was no state-created danger and because Boyle and Collins-Brown are protected by qualified immunity; and that the section 1983 claim against the Town fails because there was no policy, practice, or custom that gave rise to the events at issue.[22] *See generally* Boyle Mem.; Town Mem.

"Section 1983 provides a cause of action against any person acting under color of state law who deprives a person of 'rights, privileges, or immunities secured by the Constitution and laws.'" *Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142, 167 (D. Mass. 2011) (quoting 42 U.S.C. § 1983). To succeed on a section 1983 claim, plaintiffs must show: "(1) that the complained-of conduct was committed under the color of state law, and (2) that such conduct violated [their] constitutional or federal statutory rights." *Wadsworth v. Nguyen*, 129 F.4th 38, 50 (1st Cir. 2025) (alteration in original) (quoting *Miller v. Town of Wenham*, 833 F.3d 46, 51 (1st Cir. 2016)).

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. To establish a substantive due process violation, a plaintiff must show "a deprivation of a protected interest in life, liberty, or property" and "that the deprivation of this protected right was

---

[22] Defendants' motions make additional arguments in support of summary judgment, which the Lincoffs do not address in their oppositions. Because the Court concludes that Defendants are entitled to summary judgment as described below, the Court needs not and does not reach the remaining arguments.

caused by governmental conduct." *Rivera v. Rhode Island*, 402 F.3d 27, 34 (1st Cir. 2005). There is no dispute that Landon was deprived of life, which is a protected right. As to the second element:

> The Due Process Clause does not create an "affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). However, a plaintiff may hold a state officer liable for "failing to protect plaintiffs from danger created or enhanced by [the officer's] affirmative acts." *Irish v. Fowler*, 979 F.3d 65, 67 (1st Cir. 2020).

*Cohen ex rel. Cohen v. City of Portland*, 110 F.4th 400, 405 (1st Cir. 2024) (alteration in original).

### A.     State-Created Danger

The Lincoffs argue that the cancellation of the NRAS ambulance—the decision by Boyle, allegedly approved by Collins-Brown, and made allegedly pursuant to the Town's policy or practice of cancelling outside EMS services—constitutes state-created danger. *See, e.g.*, Boyle Opp. at 7; Town Opp. at 8. A state-created-danger claim has four basic elements: a plaintiff must establish that (1) "a state actor . . . affirmatively acted to create or enhance a danger to the plaintiff"; (2) "the act or acts created or enhanced a danger specific to the plaintiff and distinct from the danger to the general public"; (3) "the act or acts caused the plaintiff's harm"; and (4) "the state actor's conduct, when viewed in total, shocks the conscience." *Irish*, 979 F.3d at 75.

#### 1.     Boyle

##### a.     Created or Enhanced a Danger Specific to Plaintiff

To establish the first two *Irish* requirements, a plaintiff must establish that a state actor "affirmatively acted to create or enhance a danger" specific to that plaintiff, as opposed to a danger to the public at large. *Id.* at 75. The affirmative act need not greatly enhance the danger to the plaintiff; it must simply enhance it. *Welch v. City of Biddeford Police Dept.*, 12 F.4th 70, 76 (1st Cir. 2021) (citing *Irish*, 979 F.3d at 75).

11

On the record before it, the Court cannot conclude Boyle's decision to cancel the NRAS intercept created or enhanced the danger to Landon. The Lincoffs argue that Boyle enhanced the danger by preventing more qualified paramedics from providing care. Boyle Opp. at 7–9. But as of June 2021, Boyle and Hallinan were both licensed paramedics who were certified in PALS and ACLS, Town's SMF ¶¶ 40–41, 65; Boyle's SMF ¶ 24, just like both NARS paramedics, Town's SMF ¶¶ 123–24. There is no evidence that Boyle knew the experience level, qualifications, or aptitudes of the NRAS providers who were available to intercept, other than that they were generally PALS-certified.[23] *Id.* ¶¶ 78–79, 81–82, 112; Boyle's SMF ¶ 48. While neither Boyle nor Hallinan had experience responding to an unresponsive infant, that does not mean that they were not qualified to provide care pursuant to the licensing and certifications they held.[24] The availability of other paramedics who may have had more experience makes no difference—the constitution does not require providing the most experienced providers or best possible care. *See, e.g., Peete v. Metro. Gov't of Nashville & Davidson Cnty.*, 486 F.3d 217, 223 (6th Cir. 2007) ("Generally, 'it is not a constitutional violation for a state actor to render incompetent medical advice or fail to rescue those in need.'" (quoting *Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005))). For example, in analyzing whether a due process right had been clearly established to overcome qualified immunity, the Eighth Circuit rejected a state-created danger claim against paramedics who failed to provide adequate medical care, emphasizing that no one intentionally or

---

[23] The Lincoffs have put forth evidence that they argue demonstrates that Boyle should have known "NRAS could not have had less experience than TFD," Boyle Counterstatement ¶ 112. That does not reasonably suggest that he should have known NRAS paramedics would have had more experience. An NRAS provider with equal or more experience, broadly speaking, would not necessarily have experience with unresponsive infants. Moreover, the Lincoffs have provided no evidence to permit the conclusion that Boyle should have known that any paramedic on the NRAS intercept would be more experienced, let alone that Boyle would have been required to get the more experienced paramedics involved in care rather than prioritize the speed of transport to a hospital.

[24] Whether or not they did provide appropriate care is not at issue in these motions.

arbitrarily cut off emergency services to the plaintiff and that mere negligence or a failure to act does not suffice under the state-created danger doctrine. *Anderson v. City of Minneapolis*, 934 F.3d 876, 883 (8th Cir. 2019).  Similarly, in the Eighth Amendment context, which also uses the deliberate indifference standard,[25] the First Circuit has explained that "allegations [that] simply reflect a disagreement on the appropriate course of treatment . . . fall[] short of alleging a constitutional violation." *Ferranti v. Moran*, 618 F.2d 888, 891 (1st Cir. 1980).

The Lincoffs identify no authority for the proposition that Boyle or the other TFD members had a responsibility to seek out more qualified personnel when the responding paramedics had the requisite qualifications to provide care.  While the Lincoffs point to the Seventh Circuit's decision in *Ross v. United States*, where the court held a county liable under the state-created danger theory where the county "had a policy of arbitrarily cutting off private sources of rescue without providing a meaningful alternative," 910 F.2d 1422, 1431 (7th Cir. 1990), here, Boyle provided a meaningful alternative by way of the fully licensed and qualified paramedics on board the ambulance (Boyle himself included).[26]  Critical in *Ross* was that the officers *intentionally denied* emergency aid.  *Id.*  In contrast, Boyle and Hallinan provided emergency aid.  Disputing whether the aid provided was "meaningful" or sufficient is merely a reframing of the Lincoffs' negligence claims.  Again, both Boyle and Hallinan were licensed and qualified to render aid to Landon.  Thus, any enhanced danger to Landon arose out of the allegedly negligent care provided, not the cancellation of the

---

[25] *See infra*, Section III(A)(1)(b), discussing the application of the deliberate indifference standard.

[26] Any issue with whether Boyle's and Hallinan's licensing renders them qualified to provide care is a dispute about the sufficiency of the standards for certification of emergency medical service providers across Massachusetts, not a due process issue.

13

intercept.[27] But "mere negligence [is] insufficient to maintain a claim of substantive due process violation." *Abdisamad v. City of Lewiston*, 960 F.3d 56, 60 (1st Cir. 2020).[28]

### b. <u>Shocks the Conscience</u>

Finally, the section 1983 claim against Boyle fails because Boyle's actions cannot be said to "shock the conscience." To establish a substantive due process claim, a plaintiff must demonstrate "that the acts were so egregious as to shock the conscience" and "that they deprived him of a protected interest in life, liberty, or property." *Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir. 2006). To shock the conscience, the conduct "must at the very least be extreme and egregious, or, put another way, truly outrageous, uncivilized, and intolerable." *Id.* The Lincoffs contend that Boyle's actions were "unconscionable" and "reckless," putting Defendants' "above the very lives of children in the community." Boyle Opp. at 14.

There is no dispute that the loss of life, especially that of an eight-month-old, is a tragedy. But tragic circumstances, without more, do not give rise to a section 1983 claim. "The burden to show [conscience-shocking] conduct 'is extremely high, requiring stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law, even violations resulting from bad faith to something more egregious and more extreme.'" *Hewes v. Pangburn*, 162 F.4th 177, 194 (1st Cir. 2025) (quoting *J.R. v. Gloria*, 593 F.3d 73, 80 (1st Cir. 2010)).

> A hallmark of successful challenges is an extreme lack of proportionality, as the test is primarily concerned with "violations of personal rights . . . so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience."

---

[27] Nor is there any evidence that NRAS would have provided care unless someone on the TFD ambulance explicitly requested NRAS's involvement, *see* Boyle's SMF ¶ 45, furthering the conclusion that the danger did not arise out of the cancellation of the intercept.

[28] The Lincoffs also argue that Boyle cancelled the intercept pursuant to a policy or practice of cancelling NRAS intercepts in order to permit TFD teams to gain experience. *E.g.*, Boyle Opp. at 7, 10–12. The Court discusses and rejects this argument *infra* in Section III(A)(1)(c).

14

*Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 881 (1st Cir. 2010) (quoting *Moran v. Clarke*, 296 F.3d 638, 647 (8th Cir. 2002) (en banc)).  None of those "hallmarks" are present here.  There is a question as to whether Landon received the appropriate level of care, which will be resolved at a trial on the Lincoffs' negligence claims.  But negligence does not constitute a constitutional violation.  *See Soto v. Flores*, 103 F.3d 1056, 1064 (1st Cir. 1997) ("Not every negligent, or even willfully reckless, state action that renders a person more vulnerable to danger 'take[s] on the added character of [a] violation[] of the federal Constitution.'" (alterations in original) (quoting *Monahan v. Dorchester Counseling Ctr., Inc.*, 961 F.2d 987, 993 (1st Cir. 1992))).

"[C]onduct 'most likely to rise to the conscience-shocking level' is 'conduct intended to injure in some way unjustifiable by any government interest.'"  *Hewes*, 2025 WL 3677352, at *9 (alteration in original) (quoting *Maldonado v. Fontanes*, 568 F.3d 263, 273 (1st Cir. 2009)).  "Where officials have the opportunity to make unhurried judgments, deliberate indifference may shock the conscience, particularly where the state official performs multiple acts of indifference to a rising risk of acute and severe danger."[29]  *Irish*, 979 F.3d at 75.  "At a bare minimum," deliberate indifference that shocks the conscience requires the plaintiff to show that the "the defendant actually knew of a substantial risk of serious harm and disregarded that risk."  *Id.* (citation modified).

---

[29] The Court seriously doubts the Lincoffs' argument that the deliberate indifference standard is appropriate here, given the time constraints under which Boyle had to operate.  While it is not clear at what time Boyle directed the cancellation of the NRAS intercept, Boyle describes it as a "split second decision."  Boyle's SMF ¶ 40.  The Lincoffs dispute only the justification for the decision, not the timing.  Boyle Counterstatement ¶ 40.  Even in the light most favorable to the Lincoffs, the Court cannot conclude that Boyle's decision was "unhurried."  *See Irish*, 979 F.3d at 75.  "[I]n situations 'where government officials must act in haste, under pressure, and without an opportunity for reflection, even applications of deadly force by those officials cannot be conscience-shocking unless undertaken maliciously and sadistically for the very purpose of causing harm.'"  *Gonzalez-Fuentes*, 607 F.3d at 881 (quoting *Coyne v. Cronin*, 386 F.3d 280, 288 (1st Cir. 2004)).  The record lacks any evidence to suggest that Boyle had any intent to cause harm; in fact, Boyle rendered aid continuously throughout his involvement in Landon's care.  *See, e.g.*, Boyle's SMF ¶¶ 52–60, 81, 87.  The Lincoffs dispute only the sufficiency of the aid provided.  *E.g.*, Boyle Counterstatement ¶¶ 52–60, 81, 86 (*see supra*, note 9, regarding the paragraph numbering in the Boyle Counterstatement).

15

Based on the undisputed record before the Court, Boyle's actions cannot be said to have been deliberately indifferent to a substantial risk of serious harm. As discussed above, there is no evidence that Boyle knew that the NRAS intercept had more qualified paramedics or that turning away the intercept posed any risk to Landon. *See supra* Section III(A)(1)(a). Nor is there any evidence that Boyle's actions were taken to, as the Lincoffs argue, "[p]rioritz[e] the gaining of practical skills on a pediatric patient in a high acuity call" pursuant to a policy or practice established by Collins-Brown. Boyle Opp. at 15. Instead, the undisputed evidence demonstrates that Boyle acted on his belief that this was the appropriate care to provide, pursuant to his understanding of the dispatch protocols and training that shorter transport times increase patient survival.[30] Boyle's SMF ¶¶ 39–42. Specifically, there is no genuine dispute that Boyle cancelled the intercept because the ambulance already had two paramedics on board, consistent with pertinent regulations, and his belief that they could provide the necessary care to Landon without needing to further delay transport. *Id.*

The only evidence regarding Boyle's knowledge of the alleged policy is that he was aware that Collins-Brown had expressed a preference for TFD to serve as the primary transporting ambulance and that she believed TFD responders could gain additional experience by performing more transports. *E.g.*, Boyle Counterstatement ¶ 4. But that awareness alone does not create a genuine dispute about the basis for Boyle's actions on the night in question. In light of the undisputed evidence regarding why Boyle cancelled the intercept, the Lincoffs' arguments that Boyle acted pursuant to such a policy amount to mere "speculation unsupported by facts [that] is

---

[30] The TFD team's prioritization of transport speed is further evidenced by the Lincoffs' own allegations that the ambulance driver was speeding and driving recklessly, attributed to—at least in part—the driver's concern for getting Landon to the hospital faster for "definitive care." Town Counterstatement ¶ 71.

16

manifestly inadequate to stave off summary judgment." *Trahan v. Wayfair Me., LLC*, 957 F.3d 54, 63 (1st Cir. 2020) (citing *Lang v. Wal-Mart Stores E., L.P.*, 813 F.3d 447, 460 (1st Cir. 2016)).

Additionally, the record shows that Boyle took active steps to try to save Landon's life, even if the effectiveness of those efforts is disputed. *Cf. Cohen*, 110 F.4th at 405 (noting that defendant's "retrieval of rescue boat was an attempt to mitigate the danger" a drowning victim faced). As the Eighth Circuit has explained, "[p]lacing a person in need of emergency medical care on a medical transportation hold and transporting [him] to a hospital 'demonstrates a deliberate concern for [his] well-being, and not an indifference.'" *Buckley v. Hennepin Cnty.*, 9 F.4th 757, 764 (8th Cir. 2021) (quoting *Haslar v. Megerman*, 104 F.3d 178, 180 (8th Cir. 1997)).

In sum, the Lincoffs have failed to demonstrate a triable issue on whether Boyle's actions shock the conscious. Thus, Boyle is entitled to summary judgment on the Lincoffs' section 1983 claim.[31]

### 2. The Town Defendants

The Lincoffs also assert a state-created danger claim against the Town Defendants. But the act that the Lincoffs argue created or enhanced the danger to Landon is the cancellation of the NRAS intercept, for which it is undisputed that Boyle was responsible. *See Welch v. City of Biddeford Police Dep't*, 12 F.4th 70, 76 (1st Cir. 2021) ("Officers are not liable under § 1983 for the actions of other officers.").[32] To the extent the Lincoffs argue liability based on

---

[31] To the extent the Lincoffs argue that a different theory of liability under section 1983 applies, for substantially the reasons set forth by Boyle, *see* Boyle Mem. at 3–6, the Court concludes that the Lincoffs have failed to establish a constitution violation.

[32] Courts do recognize a claim of supervisory liability under section 1983. *See, e.g.*, *Cifizzari v. Town of Milford*, 2025 WL 1899043, at *14 (D. Mass. July 9, 2025). Such a claim is distinct from the tort theory of respondeat superior and "cannot 'rest solely on [the supervisor's] position of authority." *Id.* (final alteration in original) (quoting *Guadalupe-Báez v. Pesquera*, 819 F.3d 509, 515 (1st Cir. 2016)). But "there can be no supervisory liability" where a plaintiff falls to "show that behavior of a subordinate resulted in a constitutional violation." *Id.* (quoting *Pineda v. Toomey*, 533 F.3d 50, 54 (1st Cir. 2008)).

Collins-Brown's actions in allegedly approving Boyle's decision,[33] such action (or in this case, inaction) simply does to rise to the level of conscious-shocking behavior sufficient for a section 1983 claim where she was not on scene (or even in the state), took no affirmative action herself, and merely relied on her team's judgment to handle the response. Town's SMF ¶ 109–10, 113. There is no evidence in the record to suggest that Collins-Brown would have or should have doubted the TFD team's ability to respond or Boyle's determination that NRAS involvement was not necessary, especially where she was not present.[34] *See supra* Section III(A)(1)(a) (discussing how TFD team was qualified to respond and concluding that there was no obligation to seek more experienced paramedics to provide emergency care in this situation). That such a decision may have furthered her own preference to get the TFD team more experience does not change the conclusion.[35]

---

[33] It is unclear from the Lincoffs' briefing that the Lincoffs seek to make this argument, as their memorandum focuses on Collins-Brown's creation of a policy or practice of "cancel[ling] NRAS responses across the board in order to prioritize her staff's skill-building and to obtain necessary experience to sharpen their then inadequate skills." Town Opp. at 10; *see also id.* at 14, 17.

[34] The Lincoffs point to various exhibits to argue that Collins-Brown was aware that NRAS was more experienced and qualified to provide care than TFD, and that having TFD provide primary transport services put Topsfield residents at risk. *See, e.g.*, Town Counterstatement ¶¶ 136–39; Boyle Counterstatement ¶¶ 114–16. None of the Lincoffs' cited exhibits demonstrates that TFD would take on care that the paramedics were not licensed to provide, or that TFD would cancel NRAS intercepts that were medically necessary. *See generally, e.g.*, Dkt 61-9 (Town of Topsfield 24/7 Fire Study Committee Report from 2016); Dkt. 61-10 (Proposed Charge for 24/7 Fire Service Study from 2015); Dkt. 61-14 (undated, anonymous letter). A third-party complaint about TFD's experience and qualifications does not demonstrate that allowing TFD paramedics to provide care in accordance with their qualifications establishes a constitutional claim, especially where TFD personnel were still able to accept NRAS intercepts where they deemed it appropriate. Similarly, Town documents from five years prior containing general discussions about wanting TFD to get more experience but rejecting plans to increase TFD use at the time do not demonstrate that there was a policy or practice in 2021 of inappropriately canceling intercepts to take on care that TFD personnel were not qualified to provide.

[35] The Lincoffs do not appear to argue that they have asserted a state-created danger claim against the Town. *See, e.g.*, Town Opp. at 9, 11–12, 15 (making arguments with respect to only Boyle and Collins-Brown); *compare* Dkt. 1-1 ¶¶ 82–86 (alleging violation of section 1983 against the Town without reference to a state-created danger), *with id.* ¶¶ 68, 79 (alleging violations of section 1983 against Boyle and Collins-Brown and specifically alleging state-created danger). The proper vehicle for redress for any harm allegedly caused by the Town is through the Lincoffs' *Monell* claim, *see Lavigne v. Great Salt Bay Cmty. Sch. Bd.*, 146 F.4th 115, 123 (1st Cir. 2025) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978)), which the Court addresses below, *see infra* Section III(B).

**B.** *Monell* **Liability**

The Lincoffs also argue that the Town is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Town Opp. at 16–18. Under *Monell*, "[m]unicipalities cannot be held liable for the conduct of their employees unless the municipality itself is also responsible in some way for that conduct." *Lavigne v. Great Salt Bay Cmty. Sch. Bd.*, 146 F.4th 115, 123 (1st Cir. 2025) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978)). It is "when the governmental employees' 'execution of a government's policy or custom . . . inflicts the injury' and is the 'moving force' behind the constitutional violation that a municipality can be liable." *Id.* (final alteration in original) (quoting *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 25 (1st Cir. 2005)).

Critically, "*Monell* liability is contingent on an underlying constitutional violation, and 'if there is no underlying constitutional violation, there can be no municipal liability.'" *Cifizzari v. Town of Milford*, 2025 WL 1899043, at *14 (D. Mass. July 9, 2025) (quoting *Johnson v. City of Biddeford*, 665 F. Supp. 3d 82, 122 (D. Me. 2023)); *see also Kennedy v. Town of Billerica*, 617 F.3d 520, 531 (1st Cir. 2010) (collecting cases). As the Court has found that no Defendant has committed an underlying constitutional violation, the Town cannot be held liable under *Monell*.[36]

---

[36] Nor is there evidence that would permit the Lincoffs to establish the existence of a policy, practice, or custom of canceling mutual aid. There is no evidence that any officers on the scene were aware of said policy. That Boyle was aware of a preference for getting the TFD team experience does not amount to awareness of a policy of cancelling mutual aid to obtain that experience. Instead, the evidence demonstrates that cancelling NRAS assistance occurred infrequently and only where someone determined it was not necessary, given the specific circumstances. Town's SMF ¶¶ 87–89, 105, 118; Boyle's SMF ¶¶ 11–12, 14, 97. Simply put, "a single instance of . . . misconduct in the field, standing alone, is insufficient to establish the endorsement of an informal policy or custom by the City." *McElroy v. City of Lowell*, 741 F. Supp. 2d 349, 354 (D. Mass. 2010) (citing cases). Even if the Court found the evidence sufficient on the existence of a policy or practice, there is no evidence beyond speculation that Boyle acted pursuant to such a policy or practice. *See supra* Section III(A)(1).

19

IV. **Qualified Immunity**

Having determined there was no constitutional violation, the Court will not address the issue of qualified immunity for Boyle and Collins-Brown. *See Flowers v. Fiore*, 359 F.3d 24, 34 (1st Cir. 2004); *see also Penate v. Sullivan*, 73 F.4th 10, 17 (1st Cir. 2023) (quoting *Maldonado*, 568 F.3d at 269).

V. **Conclusion**

This case concerns tragic circumstances, but it does not involve a due process violation. For the foregoing reasons, Boyle's motion for summary judgment, Dkt. 48, and the Town Defendants' motion for summary judgement, Dkt. 55, are each GRANTED. The Town Defendants' motion to strike, Dkt. 68, and Boyle's motion to strike, Dkt. 69, are both DENIED as moot.

**So Ordered.**

Dated:  February 6, 2026

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court